# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# Richmond Division

| | |
|---|---|
| REGINA BALLARD | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 3:18cv92–HEH |
| | ) |
| BED BATH & BEYOND, INC., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Plaintiff Regina Ballard ("Plaintiff") initially filed this action in the Circuit Court of the City of Richmond on June 1, 2017. On January 19, 2018, Plaintiff filed a Verified Amended Complaint ("Amended Complaint," ECF No. 1-1), and, on February 8, 2018, Defendant removed the action to this Court. (Notice of Removal, ECF No. 1.) Presently before the Court is Defendant Bed Bath & Beyond Inc.'s ("Defendant" or "BB&B") Partial Motion to Dismiss and Motion to Strike pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(f) (ECF No. 3), filed on February 15, 2018.

All parties have filed memoranda supporting their respective positions. The Court will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before it, and oral argument would not aid in the decisional process. E.D. Va. Local Civ. R. 7(J).

For the reasons that follow, Defendant's Motion to Strike will be granted in part and denied in part and its Motion to Dismiss will be granted in part and denied in part.

# I. BACKGROUND

Plaintiff was an employee of BB&B from December 2003 to December 2015. (Am. Compl. ¶¶ 7, 40.) In August 2012, Plaintiff was both a store manager and an area manager for Defendant, and her husband, Clif Ballard, was a district manager for Defendant. (*Id.* ¶¶ 9, 10.) Plaintiff alleges that Defendant's regional manager, Tom Bailey, was having an affair with a BB&B employee and encouraged her husband to begin an affair with another BB&B employee. (*Id.* ¶¶ 13, 14.) She further alleges that Bailey facilitated and helped to conceal her husband's affair from her. (*Id.* ¶¶ 15, 16.) Upon discovering the affair, Plaintiff confronted her husband and complained to Defendant's human resource department about Bailey's role in it. Bailey later allegedly threatened Plaintiff, making clear that he "expected [her] to tolerate and acquiesce to her husband's affair with another [BB&B] employee, and to Bailey's encouragement of and favoritism toward the affair, as a condition of her avoiding retaliation from Bailey." (*Id.* ¶ 21.)

Plaintiff alleges that she was demoted from her position as area manager, marginalized within the company, and subjected to taunting due to her complaints about Bailey's role in her husband's affair. (*Id.* ¶¶ 22–24.) Additionally, Plaintiff was transferred from her position as store manager to the same position in a "lower-performing store" in March of 2014. (*Id.* ¶ 25; Jorif Decl. ¶ 3.) At this new location, Plaintiff was prohibited from performing some of the functions typically entrusted to a store manager and was forced to deal with unruly employees that BB&B allegedly refused to discipline. (Am. Compl. ¶ 25.) Roger Price, an employee at Plaintiff's new

2

store and son-in-law to BB&B area human resources manager Linda Hall, subjected Plaintiff to abusive and hostile behavior that included calling her a "bitch." (*Id.* ¶ 27.) Plaintiff requested assistance from BB&B's "higher managers" in dealing with Price but none was provided. (*Id.* ¶ 31.) Further, Plaintiff was disciplined for not timely sending the store schedule to her district manager, Todd Rabalais, despite the fact that creating the schedule was a function that she believes she was prohibited from performing. (*Id.* ¶ 34.)

On December 9, 2015, Rabalais interviewed employees of Plaintiff's store and obtained statements from them that supported terminating Plaintiff. (*Id.* ¶ 39.) On December 29, 2015, BB&B terminated Plaintiff for "purposefully not processing separations for associates who had failed to report to work, and instead keeping said associates on the work schedule as active associates (despite the fact that they had not reported to work in several months)." (*Id.* ¶ 41.) Plaintiff alleges that it was common practice within BB&B to list former employees on the schedule as placeholders for newly hired employees whose paperwork had not yet been processed. (*Id.* ¶ 35.)

Plaintiff filed a Charge of Discrimination ("Charge") with the Equal Employment Opportunity Commission ("EEOC") on or about March 9, 2016. (*Id.* ¶ 4.) The Charge indicates that the discrimination was a "continuing action" that began on January 6, 2015 and continued until Plaintiff's termination on December 29, 2015. (Charge 1, ECF No. 4-1.) Plaintiff's Charge contains three relevant allegations. First, the Charge states:

> I was subjected to working with an employee who had a pattern of discriminatory comments and harassing behaviors [sic] toward me. I was continually called a "bitch" and the employee made inappropriate sexual comments towards the workers in the facility. I reported this behaviors [sic] to my supervisor, Todd Rabalais, the District Manager who did

3

nothing about his behaviors toward me. Every time I complained about the employee to Mr. Rabalais, I was written up shortly thereafter. The employee became aggressive and my supervisor started to limit my ability to perform my job. He would tell me I could not do things, and then would write me up when they were not completed by other staff.

(*Id.*) The Charge additionally alleges that Plaintiff was fired "due to placement of old employee [sic] names on the schedule," that the "practice is used by several male colleagues," and that Plaintiff was held to a different standard than her counterparts. (*Id.*) Finally, the Charge concludes: "I believe that [BB&B] discriminated against me due to my gender, and retaliated against me when I filed a complaint for the inappropriate behaviors [sic] and complained about the inappropriate treatment from a subordinate." (*Id.*)

On or about February 13, 2017, Plaintiff sent a letter to the EEOC rebutting a filing that Defendant made to the EEOC and alleging discriminatory conduct by Defendant in relation to her husband's extramarital affair. (ECF No. 9-1, at 23–25.) The letter was not addressed to or copied to Defendant. (*Id.*) Defendant later received a copy of the letter through a Freedom of Information Act request that was not completed until after Plaintiff's Amended Complaint was filed, on January 19, 2018. (Reply Mem. Supp. 3 n.2, ECF No. 13.) On March 1, 2017, the EEOC sent Plaintiff a Dismissal and Notice of Rights informing Plaintiff of her right to file suit. (Am. Compl. ¶ 4(b).)

## II. LEGAL STANDARD

A challenge to the court's jurisdiction made pursuant to Federal Rule of Civil Procedure 12(b)(1) can be facial or factual. When a defendant raises a factual challenge,

4

"the district court may then go beyond the allegations of the complaint and resolve the jurisdictional facts in dispute by considering evidence outside the pleadings, such as affidavits." *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 348 (4th Cir. 2008). Consideration of evidence outside of the pleadings on a 12(b)(1) motion does not necessarily convert the motion to one for summary judgment. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). The burden of proving that the court has jurisdiction rests with the plaintiff. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted). The general rule is that in considering such a motion, the court "cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred." *Goodman v. PraxAir, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). However, in the relatively rare event that a complaint contains sufficient information to determine the applicability of an affirmative defense, a court can reach that defense on a motion under Rule 12(b)(6). *Id.* Importantly though, "all facts necessary to the affirmative defense [must] 'clearly appear on the *face of the complaint.*'" *Id.* (quoting *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993).

Finally, Federal Rule of Civil Procedure 12(f) allows a district court, either on its own initiative or on motion of a party, to "strike from a pleading an insufficient defense

5

or any redundant, immaterial, impertinent, or scandalous matter." The Fourth Circuit views motions to strike under Rule 12(f) as a "drastic remedy" that is generally disfavored. *Waste Mgmt. Holdings v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001) (quoting 5A A. Charles Alan Wright et al., *Federal Practice & Procedure* § 1380, 647 (2d ed. 1990)). Ordinarily, Rule 12(f) motions "will be denied 'unless the matter under challenge has no possible relation to the controversy and may prejudice the other party.'" *Star Sci., Inc. v. R.J. Reynolds Tobacco Co.*, 174 F. Supp. 2d 388, 396 (D. Md. 2001) (quoting *United States ex rel. Ackley v. IBM*, 110 F. Supp. 2d 395, 406 (D. Md. 2000)).

### III. DISCUSSION

#### A. Motion to Dismiss: Title VII Claims

Counts One, Three, and Four of Plaintiff's Amended Complaint are all brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. Defendant argues that the Court lacks jurisdiction over portions of those counts because the allegations contained therein exceed the scope of the allegations in Plaintiff's EEOC Charge. Specifically, Defendant contends that the Court lacks jurisdiction over Plaintiff's claims in Counts One and Four related to her husband's extramarital affair and lacks jurisdiction over Count Three to the extent it asserts a claim for racial discrimination.

A plaintiff bringing an action under Title VII must first exhaust her administrative remedies by filing a charge of discrimination with the EEOC, and the allegations raised in that charge serve to define the scope of any subsequent judicial action. *Chacko v. Patuxent Inst.*, 429 F.3d 505, 506 (4th Cir. 2005). "Only those discrimination claims

6

stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996) (citation omitted). A plaintiff fails to exhaust his administrative remedies when the "administrative charges reference different time frames, actors, and discriminatory conduct than the central factual allegations in his formal suit." *Chacko*, 429 F.3d at 506.

To be sure, the allegations in an administrative charge are to be construed liberally, as the document is not typically drafted by a lawyer and "the exhaustion requirement should not become a tripwire for hapless plaintiffs." *Sydnor v. Fairfax Cty.*, 681 F.3d 591, 594 (4th Cir. 2012). However, courts "are not at liberty to read into administrative charges allegations they do not contain." *Balas v. Huntington Ingalls Indus.*, 711 F.3d 401, 408 (4th Cir. 2013).

The purpose behind this administrative framework is twofold: it provides notice to the charged party of their alleged infringement and it brings that party before the EEOC, which in turn helps to accomplish Title VII's primary goal of voluntary compliance with the law. *Id.* at 406–07 (citations omitted). Given the notification function that an administrative charge plays, the Fourth Circuit has held that "it would be objectively illogical to view a private letter from a complaining party to the EEOC as constructively amending a formal charge." *Sloop v. Mem'l Mission Hosp., Inc.*, 198 F.3d 147, 149 (4th Cir. 1999); *see also Balas*, 711 F.3d at 408.

Plaintiff's initial Charge filed with the EEOC is the only relevant document for

7

determining the proper scope of this action. Nearly a year after filing her Charge with the EEOC and just a few weeks before the EEOC reached a disposition in her case, Plaintiff sent a letter to the EEOC rebutting a filing made by Defendant and, for the first time, making allegations related to her husband's extramarital affair. Plaintiff maintains that this letter amended her Charge. She does not, however, contend—nor do the documents before the Court suggest—that Defendant was sent a copy of this letter. To the contrary, Defendant avers that it first obtained a copy of the letter after Plaintiff filed her Amended Complaint. It is therefore clear that the goals of providing notice and facilitating a voluntary resolution could not have been accomplished as to the additional allegations in the letter. Consequently, the letter cannot be considered as part of Plaintiff's Charge "without contravening the purposes of Title VII."[1] *Balas*, 711 F.3d at 408.

Allegations in Plaintiff's Amended Complaint pertaining to her husband's extramarital affair, the encouragement of that affair by an employee of the Defendant, and subsequent harassment and retaliation that Plaintiff suffered related to that affair are not reasonably related to Plaintiff's Charge filed with the EEOC and would not have been discovered through a reasonable investigation of the allegations in the Charge. Plaintiff's allegations surrounding her husband's affair primarily involve Regional Manager Bailey,

---

[1] Plaintiff's reliance on *Fed. Express Corp. v. Holowecki*, 552 U.S. 389 (2008), is unavailing. In *Holowecki*, the Supreme Court determined what documents could constitute a charge to the EEOC absent a formal charge of discrimination in the context of a claim under the Age Discrimination in Employment Act. By contrast, in this case Plaintiff filed an initial charge and then nearly a year later sought to drastically alter the scope of her allegations through a letter containing new and fundamentally different claims. As the Fourth Circuit has stated, "persons alleging discrimination have a different form of recourse if they determine that their initial charge does not read as they intended: they may . . . file an amended charge with the EEOC." *Balas*, 711 F.3d at 408 (citing 29 C.F.R. § 1601.12(b)).

8

whereas her Charge only contains allegations pertaining to Price, Rabalais and Hall.[2] The discriminatory conduct that Plaintiff alleges in her Amended Complaint—being forced to endure her husband's affair as a condition of employment—is fundamentally different than the allegations in the Charge that Price was verbally abusive towards her and that Rabalais retaliated against her when she complained about Price's conduct.

Further, any discriminatory conduct related to her husband's affair preceded the discriminatory conduct alleged in the Charge. Plaintiff claims that her complaining about the affair led to her demotion and transfer to another store in March 2014. The Charge indicates that the discriminatory conduct complained of began in early 2015, and all the allegations contained in the Charge occurred after her transfer in 2014. Because these additional allegations do not involve the same actors, conduct or timeframe, they do not reasonably relate to her Charge and must be dismissed.[3]

Accordingly, to the extent that Counts One and Four rely on allegations related to Plaintiff's husband's affair and her subsequent demotion and transfer, these portions of Plaintiff's claims are dismissed. Plaintiff states that Count Three "does not claim race discrimination." (Mem. Opp'n 3.) Therefore, the Court will not construe Count Three as

---

[2] While only Rabalais is referred to by name in the Charge, it is clear from the Amended Complaint that the individuals referred to in the Charge as "an employee" and "HR manager" are Price and Hall, respectively. (*See* Am. Compl. ¶¶ 27–28; *see also* Mem. Opp'n 12, ECF No. 10.)

[3] Plaintiff apparently agrees that this outcome is correct at least with regard to Count I. In her Memorandum in Opposition, Plaintiff characterizes Count I as "alleg[ing] that Bed, Bath & Beyond's retaliatory conduct was its termination of her in reprisal for her continued complaints about Price's sexual harassment." (Mem. Opp'n 12–13 n.5.) Further, Plaintiff contends that Defendant "falsely claim[s] that the demotion was the retaliatory conduct alleged in Count I." (*Id.*) This contention is directly at odds with the text of the Amended Complaint which states: "Bed, Bath & Beyond demoted Ballard from Area Manager in retaliation for her complaint about the affair . . . ." (Am. Compl. ¶ 48; *see also Id.* ¶¶ 47(a)–(b), 49.) Nevertheless, this change of heart is welcomed by the Court and necessitated by the plain text of Plaintiff's Charge.

9

alleging racial discrimination, and it will not be dismissed. The references to race in Count Three will be addressed on Defendant's Motion to Strike.

**B.     Motion to Dismiss: Negligent Infliction of Emotional Distress Claims**

In Count Two, Plaintiff brings a claim for negligent infliction of emotional distress. Defendant seeks dismissal of this count under Federal Rule of Civil Procedure 12(b)(6), contending that the claim is time-barred. It is not disputed that this claim was outside of the relevant statute of limitations when first raised in Plaintiff's Amended Complaint. Plaintiff instead argues that the claim relates back to her initial complaint, which was filed in state court prior to the expiration of the statute of limitations.

The Commonwealth of Virginia's relation back doctrine is codified at § 8.01-6.1 of the Code of Virginia, which in relevant part provides:

> [A]n amendment of a pleading changing or adding a claim or defense against a party relates back to the date of the original pleadings for purposes of the statute of limitations if the court finds (i) the claim or defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth in the original pleading, (ii) the amending party was reasonably diligent in asserting the amended claim or defense, and (iii) parties opposing the amendment will not be substantially prejudiced in litigating on the merits as a result of the timing of the amendment.

Va. Code Ann. § 8.01-6.1.[4] Therefore, determining whether the claim relates back requires the Court to examine the connection between the new claim and those previously asserted and to assess the diligence of Plaintiff and the potential prejudice to Defendant.

---

[4] Virginia law, not Federal Rule of Civil Procedure 15(c), governs the relation back inquiry in this case, because the relevant amendment to the pleading occurred prior to removal of this action to federal court. *Lloyd v. GMC*, 560 F. Supp. 2d 420, 423–24 (D. Md. 2008); *see also Kirby v. Allegheny Beverage Corp.*, 811 F.2d 253, 257 (4th Cir. 1987) ("Rule 81(c) provides that the federal rules apply to civil actions removed to the United States district courts from the state courts and govern procedure *after* removal." (citations omitted)).

The Court is unable to make a determination as to the applicability of the relation back doctrine at this stage of the case. In order to assess the degree of diligence by Plaintiff and the potential prejudice to Defendant, the Court needs a more fulsome picture of the history of this litigation, which can only be achieved through examining the administrative record and documents filed in state court. Because resolving Defendant's statute of limitations defense would require looking beyond the face of the complaint, the Court declines to dismiss Plaintiff's emotional distress claim. Defendant, of course, is free to assert this defense again at a more appropriate stage of the case.

## C.  Motion to Strike

Lastly, Defendant seeks to strike several of Plaintiff's allegations related to her husband's affair and several references to race. The allegations of the affair are central to Plaintiff's claim for negligent infliction of emotional distress. Accordingly, the Motion to Strike will be denied as to those allegations. Conversely, race is not at all relevant to Plaintiff's action. She did not check the box for race discrimination in her Charge to the EEOC, and her Amended Complaint does not contain any allegations of discrimination on that basis. Moreover, Plaintiff's Memorandum in Opposition explicitly states that she does not assert a race discrimination claim. Consequently, references to race are wholly immaterial to her claims and therefore the Motion to Strike will be granted as to all references to race found in paragraphs 64, 66, 67, and 68 of the Amended Complaint.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to strike will be granted in part and denied in part and its Motion to Dismiss will be granted in part and denied in part.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
United States District Judge

Date: May 7, 2018
Richmond, VA